Pages 1 - 39

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Susan Illston, Judge

```
BLUESTONE INNOVATIONS LLC,        )
                                  )
            Plaintiff,            )
                                  ) NO. C 12-00059 SI
   vs.                            )
                                  )
NICHIA CORPORATION; NICHIA        )
AMERICA CORPORATION,              )
                                  ) San Francisco, California
            Defendants.          )
_____ )
BLUESTONE INNOVATIONS LLC,        )
                                  )
            Plaintiff,            )
                                  ) NO. C 13-01770 SI
   vs.                            )
                                  )
LG ELECTRONICS, INC., et al.,     )
                                  )
                                  ) San Francisco, California
            Defendants.          )
_____ )
                                    Friday, November 21, 2014
```

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:
**For Plaintiff**          Niro Haller & Niro
**Bluestone**              181 W. Madison, Suite 4600
**Innovations LLC:**       Chicago, IL  60602
                           (312) 236-0733 x 3225
                           (312) 236-3137 (fax)
                      **BY:  DAVID JOSEPH MAHALEK**
                           **ROBERT A. CONLEY**


Reported By:  Lydia Zinn, CSR No. 9223, Official Reporter

1   **APPEARANCES CONTINUED**

2   **For Defendant**            Paul Weiss Rifkind Wharton & Garrison
    **Nichia**                   1285 Avenue of the Americas
3   **Corporation:**             New York, NY  10019-6064
                                 (212) 373-3000
4                                (212) 757-3990 (fax)
                          BY:    **BRIAN P. EGAN**
5                                **CATHERINE NYARADY**

6   **For Defendant**            Paul Weiss Rifkind Wharton & Garrison
    **Nichia**                   2001 K Street NW
7   **Corporation:**             Washington, DC  2006-1047
                                 (202) 223-7356
8                                (202) 204-7356 (fax)
                          BY:    **KENNETH A. GALLO**

9

    **For Defendant**            Glaser Weil Fink Jacobs Howard Avchen &
10  **Vizio, Inc.:**                Shapiro, LLP
                                 10250 Constellation Blvd., 19th Floor
11                               Los Angeles, CA  90067
                                 (310) 282-6250
12                               (310) 785-3550 (fax)
                          BY:    **ADRIAN MARY PRUETZ**

13

14

15

16

17

18

19

20

21

22

23

24

25

 1           **THE CLERK:**  Okay.  Calling Criminal 12-59, and --

 2      Criminal?  Excuse me.

 3      Calling Civil 59 and -- 12-59 and 13-1700, *Bluestone*

 4  *versus Epistar*.

 5           **MR. MAHALEK:**  Good morning, Your Honor.

 6  David Mahalek, and with me, Bob Conley, on behalf of plaintiff

 7  Bluestone.

 8           **MR. CONLEY:**  Good morning, Your Honor.

 9           **MR. GALLO:**  Good morning, Your Honor.  Ken Gallo,

10  from Paul Weiss, for Nichia.  And I have Catherine Nyarady and

11  Brian Egan with me.

12           **THE COURT:**  Could you just say that again, please?

13           **MR. GALLO:**  I'm sorry.  It's Ken Gallo --

14           **THE COURT:**  Yeah.

15           **MR. GALLO:**  -- from Paul Weiss, for the defendant

16  Nichia.

17           **THE COURT:**  Yes.

18           **MR. GALLO:**  And I have Ms. Nyarady and Mr. Egan with

19  me.  And then Vizio's counsel, also.  Vizio's counsel is also

20  present.

21           **MS. PRUETZ:**  Good morning, Your Honor.

22  Adrian Pruetz, Glaser Weil, for Vizio.

23           **THE COURT:**  Good morning.

24           **THE CLERK:**  Oh, what was your -- Adrian what?

25           **MS. PRUETZ:**  Pruetz.  P-r-u-e-t-z.

1          **THE CLERK:**  P-r-u-e-t-z.  Adrian.  Okay.

2          **THE COURT:**  Okay.  Got you.  Thank you.

3      This is defendants' motions for summary judgment of

4  noninfringement with respect to the '557 patent.  It's the

5  defendants' motions.  I'll let you go first.  I've reviewed the

6  matter.

7      One question that I will have for plaintiff's counsel when

8  the time comes is to tell me about discrete portions, as

9  opposed to entire portions; and how that was disclosed either

10  in the infringement contentions or in any of the discussions

11  we've had up until now, if it was, because that's a problem I

12  have.

13          But anyway, Mr. Gallo, you may proceed.

14          **MR. GALLO:**  Thank you, Your Honor.

15      May I hand the Court --

16          **THE COURT:**  Sure.

17  (Whereupon a document was tendered to the Court.)

18          **MR. GALLO:**  And if things work properly, these slides

19  will also appear, I think, in front of you.

20          **THE COURT:**  Yeah.  I see them there.  Thank you.

21      How do you say your client's name?

22          **MR. GALLO:**  Nichia.

23          **THE COURT:**  Nichia.

24          **MR. GALLO:**  Right.  So if it's acceptable to the

25  Court, our plan was that I would address the Nichia

1   summary-judgment motion, which has a single argument in it.

2       Vizio makes the same argument, and also makes two

3   additional arguments.

4           **THE COURT:**  Right.

5           **MR. GALLO:**  And Ms. Pruetz would address those

6   additional arguments.

7       We respectfully submit that summary judgment of

8   noninfringement should be granted, Your Honor.  And we begin,

9   of course, with the claim language which is at issue.  And the

10  claim language is "at least one mesa, including services

11  oriented along the planes of the epitaxial film."

12      And, of course, that language was argued and construed by

13  the Court, after a lengthy argument, to refer to, "each such

14  mesa includes at least two surfaces, each parallel to some of

15  the crack planes."  And that's the language that we have moved

16  on for noninfringement.

17      The m-planes you will recall, perhaps, from claim

18  construction, although I know you have a lot of cases, so

19  perhaps not.

20          **THE COURT:**  I still do have this (indicating).

21          **MR. GALLO:**  Perfect.  Perfect.  So the m-planes --

22  the important point really is quite simple; that the m-planes

23  are flat.  And they are perpendicular to the substrate, as

24  shown on Slide Number 4.

25      The substrate is the lower block cube representation

1    there.  And the m-plane is flat and perpendicular on the

2    substrate.  That's uncontested.  It's in the patent.  It's

3    uncontested in the summary-judgment papers.

4        So if one wanted to visualize -- and this is obviously a

5    demonstrative, but if one wanted to visualize an m-plane that

6    was perpendicular to the GaN layer there, which is in red, the

7    m-plane there would flow in a way that is the way people

8    commonly think of perpendicular [sic] -- I mean -- I'm sorry --

9    parallel, rather, flowing along the same -- in the same

10   direction, and equidistant at all places from the red GaN layer

11   of the epitaxial film which is reflected in that slide.

12       Now, we respectfully submit that summary judgment is

13   appropriate, because it's undisputed in this case that the

14   entire surfaces, at least -- although we think it's just the

15   surface -- the surface does not satisfy that claim element.

16   It's undisputed that the surface is curved.  That's really not

17   in dispute.

18       It's undisputed that the surface is sloped.  It's

19   undisputed that, on, one of our products, it's rotated

20   30 degrees away from the m-plane, so that it's not running

21   equidistant.  And none of that is disputed.  That's very

22   important; that the factual characteristics of the structure

23   are not disputed in this case.

24       And at the end of the day, Bluestone tries to avoid

25   summary judgment by simply arguing that discrete portions of

1   the surface are parallel, quote, "in the direction of the

2   m-plane." And, of course, "discrete portions" is not in your

3   claim-construction Order, nor is "in the direction of" in your

4   claim-construction Order.

5       And we respectfully submit that Bluestone is, in

6   essence -- would be, in essence, if they went to trial on that

7   theory, inviting the jury to answer the wrong question; not the

8   question presented by the claim construction of this Court.

9       So I will review very quickly the undisputed facts,

10  because I think that Your Honor probably appreciates them, and

11  they're not disputed at the end of the day.

12      But the undisputed facts show up here in -- first in this

13  Slide Number 6.  On the left -- on the far left is the image

14  that appears in Bluestone's own infringement contentions.

15  Those two images on the top and the bottom on the far left come

16  right out of their infringement contentions.

17      They also come right out of the Exhibit 1 and 2 of the

18  Narita Declaration that we submitted that says:  This is what

19  the protrusions -- the mesas -- look like.  That's in evidence

20  at summary judgment:  The top image on the left and the bottom

21  image on the left.  There's no dispute about that.

22      Also in evidence at summary judgment is the Narita

23  Declaration, itself, which says these mesas -- these

24  protrusions -- the surfaces are curved.  The surfaces are

25  sloped.  And on one of the two products -- the top product --

1   it's rotated 30 degrees away from the m-plane.

2       Bluestone disputes none of that at summary judgment.  All

3   of those facts are undisputed.

4       The next image in the middle of the page comes right out

5   of Bluestone's brief.  It's simply an enlarged, blown-up

6   version of one of the protrusions.  And it's pixilated because

7   of the fact that it's blown up, but we show it here.  And

8   Bluestone shows it in its brief because, if one imagines the

9   flat perpendicular m-Plane which we have identified in red --

10  next to that blown-up protrusion, which is in Bluestone's own

11  brief, it's clear that those are not parallel to the m-plane in

12  the sense if one accepts that "parallel" means "equidistant at

13  every location," because, again, the sides are -- the sides are

14  curved.  The sides are sloped.  And in one of the products the

15  side is rotated away, as compared to the parallel wall.

16      And then over on the far right is the demonstrative image

17  that appeared in our brief that Bluestone complained about.

18  And I show you this slide for the obvious purpose of making the

19  point that it's in the evidentiary record, both in their

20  infringement contentions and in the Narita Declaration.  And

21  the demonstrative image on the right is simply intended to

22  assist the Court, and we think is fairly representative of what

23  the evidence is in the record.

24      And so in Slide Number 7, which is in front of the Court,

25  our point is if you look at the top left image and the top

1    right image, those curved surfaces cannot be parallel to a flat

2    surface.   If you look at the bottom left image and the bottom

3    right image, sloped surfaces cannot be parallel to a

4    perpendicular surface.   And, of course, the m-plane is both

5    flat and perpendicular.   And if you look at the bottom left

6    image, surfaces that are rotated 30 degrees away from the

7    m-plane can't be parallel to the m-plane.   And none of these

8    facts are disputed in the record about the characteristics of

9    the product.

10        And so we cite and rely on, obviously, the *Laser Diode*

11    case, where a District Court Judge in the Northern District of

12    New York, I believe, dealt with the issue of, "What does

13    'parallel' mean?" and concluded it means that two objects are

14    everywhere equidistant.   And again, that definition of

15    "parallel" is not contested by Bluestone in their papers.   We

16    also submitted common dictionary definitions which are the

17    same.

18        And our argument, therefore, is really very simple.   And

19    at the end of the day, Bluestone doesn't even contest it.   If

20    you look at the, quote, "entire surface" -- we would say

21    "surface" -- Bluestone admits it in their brief at page 6.

22    They say they don't contest it.   They say there's a different

23    question in front of the Court.   And we respectfully disagree

24    with that.

25        Here's the way they frame the question, which is that

1   you -- we have to decide whether a discrete portion of that

2   side wall is parallel in the direction of the m-plane, as

3   opposed to what your claim construction does.  And so they've

4   added language to your claim construction.

5       And we submit that that language would not properly be

6   presented to the jury, because that's not what the claim

7   construction is.  And, in fact, it would be -- it would be

8   inappropriate to submit that to the jury.  The

9   claim-construction Order was clear.  We discussed what

10  "surface" is at length in the claim-construction argument.  We

11  discussed "parallel requirement" at length in the

12  claim-construction argument.  And if one were to go the way of

13  Bluestone's argument, it leads to a result that cannot be

14  reconciled with this patent.

15      And I would -- in Exhibit 11, if one were to accept

16  Bluestone's argument that all you needed is two surfaces that

17  were parallel in the direction -- two discrete portions of a

18  surface, or that was consistent -- that was parallel to the

19  crack plane, you could have the -- you could have a surface

20  that looked like the image on the right, and it would be

21  infringing under what -- the argument they're making to the

22  Court that you'd have two little pieces of the surface of

23  the -- if the blue is the mesa -- blue is representative of the

24  mesa.  Right?  You'd have two little discrete portions.

25      And under Bluestone's argument they would say, "Well, see?

1 Those two little discrete portions are parallel to the crack

2 plane.  Therefore, this surface of the mesa is infringing."

3 But it would defeat the entire purpose of the patent, because

4 the purpose of the patent was to have the surfaces of the mesa

5 not cross the m-plane.  If the surfaces of the mesa cross the

6 m-plane, it causes it to crack.  And yet this would fit their

7 infringement theory.

8      And we use this obviously as a demonstrative, but as an

9 illustration of the implications of what they're asking you to

10 do in order to deny summary judgment.  The purpose of the

11 patent would be defeated.

12      But more directly, although Bluestone says you should look

13 at the discrete portions of the -- of the surface, when they

14 suggest that to you in their brief, there's no citation to

15 anything.  Zero.  There's no citation to anything in the

16 prosecution history, the specification, the claim language, or

17 your claim-construction Order.  It is simply an assertion that

18 doesn't support anything.

19      And, in fact, the patent does teach something about what

20 "surface" means.  The patent does teach -- and in Slide Number

21 12 it does talk about -- what the surfaces are.  And it says,

22 for example, that the -- "side surface 12 extending along the

23 length of mesa 10."  So it actually contemplates "surface" in a

24 way we respectfully submit your claim-construction Order used

25 the term and in the way we're using the term.  And it says the

1    end surface extends along the width of the mesa.

2        It doesn't talk about carving that surface up into any

3    number of, quote, "discrete portions."  The patent talks about

4    the surface in the way we're using it, because that's what

5    implements the purpose of the patent, is to have the surface be

6    parallel, and not cross the m-plane.

7        And in fact bluestone, itself -- Bluestone, itself, in its

8    infringement contentions, discussed what the "top surface"

9    meant.  And this is important because "surface" in the

10   patent -- "surface" in the patent is used sometimes to refer to

11   the top surface, sometimes to refer to the side surface, and

12   sometimes to refer to the end of the surface.

13       And Bluestone, at claim construction, argued repeatedly

14   "surface" has to have the same meaning when it refers to the

15   top surface, when it refers to the side surface, and when it

16   refers to the end surface.  And, of course, we agree.  We

17   didn't even contest that.

18       But in their own infringement contentions, which are

19   reflected on this Slide 13, when they identified the top

20   surface, they identified the entire top surface; not a discrete

21   portion of the top surface.

22       So now when they ask the Court to permit them to go to a

23   jury on the discrete-portion theory, they're asking for

24   effectively a different definition of the term "surface" than

25   they did when they identified in their own infringement

1 contention, which is on the left, what the top surface was.

2 They circled the whole surface.  And that's right, because at

3 the time they weren't facing this summary-judgment motion, to

4 be candid about it.

5      When they made arguments to you at Markman -- the images

6 on the right in this slide are images they used at the Markman

7 hearing -- they identified the top surface as the entire top

8 surface; not some discrete portion of the top surface.

9      So it requires -- the top surface requires that it --

10      All we're saying is:  They knew what "surface" meant then.

11 And it meant the entire surface, not this discrete -- not this

12 discrete portion of the surface.

13      One last point, and then I'll move to the point that you

14 raised about whether the contentions were timely.  One last

15 point; and that is that, again, it would be inappropriate for

16 this theory to go to a jury, because this theory would

17 essentially allow an indefinite claim term to go to the jury;

18 an indefinite infringement theory.

19      The slide in front of you -- I just confused things --

20 doesn't have anything to do with what I'm saying right now.  I

21 apologize.

22           **THE COURT:**  Okay, because I can't figure it out.

23           **MR. GALLO:**  No, no.  That's my fault.  A little

24 overanxious on the button here.

25      If this theory went to a jury, Your Honor, it's just

another reason summary judgment is appropriate, because it would be an indefinite -- it would be an indefinite term that should -- that one could not figure out what was infringing, or not.

So imagine if one were even to accept their argument completely, and they say, "If you focus on this little tiny part of the surface, it infringes, because we've got it small enough to where it's not curved and it's not is sloped. It's a dot." Okay?

And it doesn't.

But then you increased it by, say, twice the size. Now it's curved and sloped.

So the very same physical structure, depending on how much of it you look at, either infringes or doesn't infringe.

And we suggest in our papers quoting -- stealing language, and quoting it from a case, that that is, quote, "the epitome of indefiniteness," where --

Are they then going to take a little thing and say, "Now you can draw a line between it. Now you have two surfaces. Now we've met both claim limitations." That is indefinite. And that's another theory that this theory shouldn't be allowed to go to the jury.

**THE COURT:** I was thinking about tangents on which I go from time to time, but try not to do so here. But really their argument about the portion of the surface is like an

1  argument that a tangent would be parallel.

2         MR. GALLO:  That's exactly right.  That's exactly

3  right.  And that's what the Court in the *Laser Diode* case -- I

4  believe I'm correct that the Court in the *Laser Diode* case, I

5  believe, made that point; that if you accepted this as

6  parallel, then a tangent would be parallel.

7         THE COURT:  But of course, that --

8         MR. GALLO:  -- can't be right.

9         THE COURT:  You can't say that about a point.  So --

10         MR. GALLO:  Correct.  So, Your Honor, with -- unless

11  there's questions on that part of the presentation -- and I'm

12  almost done.  I'll be brief, but I wanted to just speak to this

13  issue about whether the claim -- whether the disclosure was

14  timely.  And I can be brief on this.  And we respectfully

15  submit it's not timely.

16     And, of course, this Court is very familiar with the Local

17  Rule, and I'm not going to try to talk about the Local Rule to

18  you.  So -- but the Local Rule means what it means.

19     But here's the facts of what happened here.  The original

20  contentions that were disclosed are on the left in this slide

21  (indicating).  And they had no yellow dots on them.  And they

22  said nothing --

23     Well, let me back up.  Let me make the first point.  The

24  first point is:  There's nowhere in their infringement

25  contentions that the word "discrete portions" are used or

1    anything resembling the words "discrete portions" are used.

2    There's no such language in the infringement contentions.

3          The first disclosure is --

4               **THE COURT:**  There was no language like that in the

5    proposed claim constructions.  Right?

6               **MR. GALLO:**  No, there was not.  There was not.

7          The first contention there is on the left.  And it shows

8    the protrusions that we've been talking about.

9          And now at summary judgment -- and then after your claim

10   construction -- strike that.  I'm sorry.

11         And then we got the contentions on the right, because we

12   moved and said we would like more specificity in the

13   contentions.

14         And we got the contentions on the right, which had these

15   yellow circles on them.

16         And now at summary judgment, Bluestone is arguing:  Oh,

17   well, those yellow circles were a disclosure about discrete

18   portions.

19         A few points about that.  Point number one:  When they

20   provided the updated contentions with the yellow circles, they

21   didn't say one word about the yellow circles indicating

22   discrete portions.  They said the opposite, in fact.  In the

23   language, they said, "Our old contentions were fine.  Somebody

24   of skill in the art would have understood it.  Here's new

25   contentions," which had the yellow circles, but did not suggest

1  that the yellow circles were supposed to tell us anything that

2  we didn't already know.

3       We looked at those yellow circles; I assure you.  And I

4  represent to the Court that if you look at them closely, they

5  do not put you on notice that they're talking about discrete

6  portions of the side walls that are allegedly not curved or not

7  sloped.

8       When you look at them closely, you see, for example, that

9  the number 2 in the middle here -- I'll indicate this in the

10 middle here -- it covers essentially the whole side wall.  The

11 number 1 below it covers essentially the whole side wall that

12 everybody agrees is curved and sloped.  The whole side wall --

13 I mean from top to bottom.  So it would be sloped.  And

14 everybody agrees it's sloped.  And it wouldn't -- does not

15 indicate in any way that it's limited to some portion that's

16 not sloped.  There would be no way to determine that.  It

17 covers essentially the whole thing.

18      If you look at the number 2 up in the very top frame, very

19 top one, it's actually partially off the protrusion.  So

20 it's -- it's not like it's some precise yellow circle that is

21 trying to tell us:  Oh, look here at this very discrete little

22 area.

23      In the bottom center, the number 2 covers two different

24 side walls.  It actually overlaps on two different side walls.

25 Far from being discrete portions which should have put us on

1    notice of anything, they're just directing us, fairly read, to

2    the side wall; not anything more than that.

3        And respectfully, Bluestone, I think, recognizes this;

4    because here's the infringement contention on the left.  That's

5    what they disclosed to us.

6        And the brief in front of Your Honor at summary judgment

7    is on the right.

8        And so they've reduced the yellow circle to try to make it

9    look like we should have been on notice.  But there, the first

10   time that image appeared was in the brief opposing summary

11   judgment; not in the infringement contentions.  So it could not

12   have put us on notice, particularly when construed against the

13   plaintiff if ambiguous, which is what I understand the standard

14   is in this jurisdiction.

15       Last point is that Dr. Romano, one of the inventors, was

16   here for the tutorial, and spoke in front of the Court.  I

17   don't -- I was going to use the word "testify."  I don't recall

18   whether she was sworn in, but it doesn't really matter.

19       Dr. Romano was asked to explain to the Court for the

20   tutorial:  What was the surface?  What is the surface?

21       Please don't look at the blue lines up above.  It's the

22   inside green lines; the little ones on the inside that your eye

23   would not naturally be drawn to.  Those were identified --

24   those green lines -- as the surface.  It covers the entire

25   side -- the surface of the protrusion.  There's -- there was no

1  suggestion from the inventor or from Bluestone at claim

2  construction that the Court or Nichia, before the defendants,

3  ought to be focused on a discrete portion of that side wall.

4  The green line covered the whole thing.

5      And the reason is because nobody thought of this argument,

6  respectfully, until summary judgment was filed.  And now the

7  argument's being made.

8      So respectfully, Your Honor, we submit there are no

9  disputes about the characteristics of this structure.  And it

10  is a proper legal question to be resolved at summary judgment.

11  Thank you.

12          **THE COURT:**  All right.  Thank you.

13      Do you want to go now, or do you want to go one by one?

14  Why don't you come on up?  And then we'll just do it all

15  together.

16          **MS. PRUETZ:**  Oh, thank you.  Good morning again,

17  Your Honor.

18      So Vizio moves for summary judgment on the ground that the

19  products that Bluestone has accused of infringement fail to

20  meet three limitations of the asserted claims.

21      Now, Bluestone has charted what they call three

22  "representative products"; products representative of Vizio's

23  entire product line.  And for purposes of this motion, we're

24  not dealing with the ones they haven't investigated, because

25  the three products they call "representative" are all pretty

1   much the same.  They all have a bubble shape to them that the

2   Court can see.  And all of the pictures on these slides are

3   right out of Bluestone's infringement contentions.

4       So I'll start with the fact that the accused Vizio

5   products don't have a top surface that is the uppermost surface

6   of a mesa providing a reduced growth area dimensioned such that

7   it reduces stress and associated cracking of the epitaxial

8   film.

9       This is Bluestone's picture of the bubble.  And this is

10  also -- the Court can see that Bluestone has annotated it to

11  put red broken lines around what it's calling the "mesa"

12  arbitrarily, and then showing all of the GaN.  And the GaN

13  covers the entire surface of this bubble.  There's no

14  demarcation between top and side.  There's no area that one

15  could point to that is a reduced growth area on this bubble.

16      And this is essentially ignored by Bluestone in its

17  opposition to our motion.  They try to focus the Court on the

18  fact that the Court had found, during claim construction, that

19  it was okay if some of the GaN was on the side walls, but that

20  doesn't change the fact that in this shape, there is no --

21  there is no dimensioned area, no reduced growth area, which is

22  one of the major novelties of this patent.  It's talked about

23  throughout the patent, and we cite it in our brief.

24      And I'll just cite a few columns:  At column 2, lines 23

25  to 25; column 4, lines 4 to 11; column 4, lines 16 to 17; and

column 6, lines 19 to 21.  All talk about the novelty of this invention to reduce the cracking of the GaN and AlGaN films by growing the GaN film on reduced area surfaces of a mesa.

And both the '557 patent and, I think, the Court's construction of it are actually very clear on this point that the mesas claimed must provide a reduced growth area that is dimensioned to reduce the cracking.

Now, Bluestone doesn't dispute the undisputed fact that the Vizio bubble structures are just buried in the GaN.  I mean, it's just all over them.  It's a completely different kind of an approach to an LED.  And one could say that it actually -- in comparison to the discrete portion that is being described in the '557 patent, that Vizio increases the surface growth area beyond that discrete area to cover the entirety of the substrate.

I would point out that the claims against Vizio are only for direct infringement, and only for literal infringement.  And this element is missing.  And with this element missing, we respectfully submit that we're entitled to summary judgment.

Our second argument is very similar, if not exact, to the argument that Mr. Gallo just made with respect to Nichia; and that is that the LED substrate structures on the substrate in the accused Vizio products do not have at least two surfaces that are each parallel to some of the crack planes.

This is a bubble structure.  It's a curved and sloped

1  structure, and it doesn't anywhere -- it just isn't anywhere

2  parallel to an m-plane.

3      Now Bluestone has -- in our infringement contentions, they

4  have created a diagram, Figure 2, where they scrape away and

5  create a different shape, to change the bubble into something

6  like kind of a curvy pyramid.  But even the shape that they

7  create, which is -- which they admit is manipulated and is not

8  the original shape, is not parallel to any m-Plane, and is

9  not perpendicular to the substrate, as it has to be.

10      So with Vizio, as well, Bluestone makes for the first

11  time -- it's not in the infringement contentions; it wasn't

12  raised at claim construction -- this discrete-portion argument.

13      And you can see in their papers there is -- they take a

14  completely curved side, and then have an infinitesimal red line

15  at the bottom, saying, "Look down here.  It looks a little

16  straight."

17      And the only thing that looks straight on that picture --

18  and we have it in our brief at -- let's see -- page 12.  The

19  only thing that's straight is the red line, which isn't

20  evidence.

21      But we would also submit -- and I don't want to belabor

22  it, because I think Mr. Gallo did an excellent job of pointing

23  this out -- that it's just an attorney argument that's not

24  supported by the patent specification that they could just

25  arbitrarily pick a discrete portion of a shape, and decide that

1   that's all that has to be parallel to an m-plane, when the

2   specification itself makes clear that it is a surface that is

3   parallel to an m-plane.  And that is the surface that is

4   aligned along both the length and the width of an m-plane.

5        **THE COURT:**  But that's why it's working.  Right?

6   That's the point of it working, is to have that orientation.

7        **MS. PRUETZ:**  I think that's exactly right.  I think

8   that is another -- it is one of the claims that creates the

9   novelty, if there is one, of this invention; that it solves the

10  cracking problem by not allowing the crossover of the field,

11  and not allowing a different shape.  It's strictly this

12  parallel that is part of the solution to the cracking problem

13  that they have proposed.

14     And I have one final argument for Vizio.  And this

15  argument relates to the Court's claim construction -- let's see

16  if I can find my place -- claim construction of "mesa," because

17  the Court construed a "mesa" as "an elevated formation with a

18  top surface and side surfaces."

19     And again, we are looking at a bubble with one continuous

20  surface.  And I think that Bluestone essentially concedes that

21  there has to be some kind of boundary to create a top surface,

22  because Bluestone takes it upon itself to create one, by

23  creating a little red box and saying, "This is the top

24  surface," although there's absolutely no boundary on the Vizio

25  LED that would demarcate a top surface.  There's no -- there's

1 no separation, if you will, or dividing line between any kind

2 of side surface and a top surface on these bubbles.

3     So again, they try to --

4     And it's interesting because, you know, when they want to

5 point the Court to the parallel argument, they use their

6 Figure 2 that they created by etching, where they etched away a

7 portion of the side to try to create something that looks flat.

8     But they have a problem with their Figure 2, because they

9 etched the Vizio LED into a point, so there's no top surface.

10 So they can't make their top-surface argument by using their

11 Figure 2.  So they go back to their bubble where they have the

12 red box and they say, "Well, this is very conveniently that

13 this red box creates top surface.  And look.  It's even less

14 than 10 microns, like the patent requires."  But that's just

15 manufactured evidence.  I mean, that's not anything that you

16 can see by looking at their own electron-microscope picture of

17 the LED.

18     So realizing that that might be a problem, again, they

19 come up for the first time with a discrete-portions argument.

20 And they take a tiny little piece of the top of the bubble

21 that's 200 times smaller than this image which is 1 micrometer,

22 and they say, "Look.  If you look at this, you -- you know, it

23 looks kind of -- kind of like a surface."

24     And as we've said in our papers, you know, there were

25 people in the 14th century that thought the world was flat,

1   because they couldn't see an image of all of it.  They just

2   looked out their window, and the ground looked kind of flat.

3   So they thought, well, the whole world is flat.

4        Well, we have the benefit here of being able to see the

5   entire LED, so we know it's not flat.  And it doesn't have the

6   this flat surface that they're trying to create there.

7        So I would respectfully submit that with respect to the

8   mesa element, as well, the Vizio LED just does not meet this

9   limitation of having the top surface as construed by the Court.

10            **THE COURT:**  All right.  Thank you.

11            **MS. PRUETZ:**  Thank you, Your Honor.

12            **THE COURT:**  Okay.  Mr. Conley.  Did I get that right?

13            **MR. CONLEY:**  Yes, that's correct, Your Honor.

14            **THE COURT:**  Okay.

15            **MR. CONLEY:**  My colleague, Mr. Mahalek, is also at

16   the podium, because we're going to be speaking to different

17   points if that's okay with Your Honor.

18            **THE COURT:**  Sure.

19            **MR. CONLEY:**  I think I'd like to start by addressing

20   some of the points that Mr. Gallo made on behalf of Nichia.  He

21   is correct that there are very few factual disputes here.

22   There's no dispute that we're dealing with structures that are

23   curved.  There's no real dispute about the factual composition

24   of the materials, or how they're oriented.

25        Where I think we have a radical difference of opinion from

1  the defendants' position in this case really goes to two legal

2  issues, and the first of those is:  What was the Court's intent

3  when Your Honor placed the word "parallel" into the

4  construction of the disputed phrase?

5          **THE COURT:**  Well, I meant it was parallel.

6          **MR. CONLEY:**  I understand that, Your Honor.

7      I think where we have a difference of understanding from

8  the defendants is whether we're talking "parallel" in a

9  directional sense or "parallel" in a planar sense.

10     When we read Your Honor's construction of the disputed

11 term, two things that Your Honor started with was by saying

12 that the '557 patent does not require the surface of the mesa

13 to be flat; and Your Honor also said that the claim simply

14 requires that the mesas have surfaces oriented along the crack

15 planes.

16     There is no claim language requiring that these surfaces

17 be only the side surfaces.  And I believe as Nichia points out

18 in their brief as a footnote that opened up the possibility

19 that you could be talking about the top surface oriented along

20 the crack planes.

21     When we took those ideals and put them in the context of

22 the word "parallel," our belief was that we were still talking

23 about parallel in a directional sense.

24     Now if Your Honor's intent was to talk about "parallel" in

25 the planar sense, I don't think there's any dispute here

between anyone in the courtroom that defendants are entitled to

summary judgment, because they do have surfaces that are not

parallel to the m-planes in that sense.  They're -- and that

they are not perpendicular to the substrate.  So there's no

dispute about that.  If that was Your Honor's intent, we would

concede that defendants are entitled to summary judgment.

     If we're instead in the neighborhood of talking about

directional parallelism, we think that's still comports with

our theory of infringement.

     Going --

          **THE COURT:**  Can you tell me exactly what you mean by

"directional parallelism"?

          **MR. CONLEY:**  Certainly, Your Honor.  I think it goes

back to the argument we made during the claim-construction

proceedings.  I had discussed when we were talking about what

"oriented along" means.  And I had given the example of "Let's

assume the walls to the sides of me are m-planes."  And we're

talking about orienting surfaces of mesas, whether it be one or

two or three mesas, placed in a direct line between myself and

Your Honor.

     And the point that I had tried to make during the claim

construction was that -- let's say I have three mesas in a row,

and they all have side walls or side surfaces that are angled,

and they line up from myself to you.  There is directional

parallelism there with respect to those surfaces and the

1  m-planes in this direction.  And that holds true whether the

2  surfaces are slanted or upright.  It would also hold true if

3  we're talking about a top surface that runs from myself to you.

4       And we believe that was part of what Your Honor had

5  contemplated by saying that the claimed surfaces do not require

6  that the surfaces be only the side surfaces.  We believe that

7  embraced our infringement theory.

8       Now if we're wrong about that, like I said, there's no

9  question about it.  Summary judgment in favor of the

10 defendants.  We don't contend otherwise.  That's the first

11 point.

12      I think the second point goes toward, you know, whether

13 there was a construction of the phrase "surface" -- just

14 "surface" -- during the claim-construction proceedings.

15      And we certainly had construction of what's a top surface.

16 And as Your Honor knows, both sides presented their arguments

17 on that point, but I don't know that we ever actually

18 construed:  What does the word "surface" mean?

19      Now as part of Your Honor's construction of the term

20 "mesa," the defendants essentially lost their bid to say that a

21 mesa has to be an object that has vertical side walls.  And as

22 Your Honor is familiar, the patent talk about how a mesa can be

23 polygonal.  "Typically polygonal," I believe, is the language

24 that the patent uses.

25      We believe Your Honor's construction allowed for mesa

1   structures which would be curved or cylindrical or circular.

2       And I think that's kind of where we're at.  We used this

3   language "discrete portions" in the brief.  And in hindsight, I

4   think maybe that's not the best wording to use.

5       What we're trying to argue -- you know, I think what it

6   comes down to from a legal standpoint is:  What's the

7   definition of "surface" when we're talking about a circular

8   structure or a curved structure?

9       And I think there's different mathematical schools of

10  thought.

11      If one were to pose the question, "How many surfaces or

12  how many sides does a circle have?" you could look, and you're

13  going to find different answers to that question.  Some people

14  will tell you it has zero.  Some people will tell you it has

15  one.  Some people will tell you it has many, many surfaces or

16  an infinite number of surfaces.

17          THE COURT:  Yeah, but will anybody tell you that a

18  circle is parallel to a straight line?

19          MR. CONLEY:  Our position is that if we're focusing

20  on -- with the notion that a circle has many, many, many

21  surfaces.  That's our position.

22      If you're of the belief that a circle --

23          THE COURT:  It's got many points.  So you're calling

24  a "point" a "surface"?

25          MR. CONLEY:  Essentially, yes, Your Honor.

1      **THE COURT:**  So then, of course, it's everywhere

2  parallel and nowhere parallel.  It's parallel to everything, if

3  you're just going to look at a point.

4      **MR. CONLEY:**  And when we're talking about discrete

5  portions, that is our position.  We're taking a very, very

6  narrow portion, and saying that that -- essentially, that point

7  would constitute the surface that runs parallel.  That is our

8  position.

9      **THE COURT:**  But I'm just wondering where I look in

10  the patent or the specification or in the entire proceedings in

11  this case to date for a reason to do that.

12      **MR. CONLEY:**  I think the patent certainly speaks to a

13  preferred embodiment, where we're looking at rectangular mesas.

14  And there it's very clear what the patent is talking about.

15      I think what we have to sort out from a legal standpoint

16  is:  How do you define a surface when you're talking about a

17  cylindrical or a curved structure?

18      And Your Honor's claim construction, from our standpoint,

19  certainly allowed that the claims could apply to the structures

20  having those shapes.  So I think what we need to sort out from

21  a legal standpoint is whether one of those many, many, many

22  surfaces that we would contend form a cylindrical or circular

23  structure or a curved structure can constitute the claimed

24  surface.

25      If you're --

1          **THE COURT:**  Wouldn't that be an issue to raise at

2    claim construction, if you're going to now try to define

3    "surface"?

4          **MR. CONLEY:**  And I think -- I think --

5          **THE COURT:**  Because we didn't; did we?  I don't think

6    we had "surface" to divine.

7          **MR. CONLEY:**  That's correct, Your Honor.  We did not

8    define the word "surface."

9       And I think that kind of leads into your question that you

10   presented to us before we began the hearing this morning of,

11   you know:  Where in the contentions did you ever talk about

12   discrete portions, or this notion that you're trying to say

13   that the surface that's oriented parallel is anything other

14   than the entire surface?

15      We see our infringement contentions a bit differently than

16   defendants do in terms of what the intent of placing these

17   yellow circles on the side walls of the mesas -- you know, what

18   the intent there was to show.  For us, we were placing those

19   circles on the mesas so that you could see, much like the

20   scenario that I voiced to you, where, if we had a series of

21   mesas running from me to you -- and let's assume they're all

22   circular.  Three circular mesas running from me to you.

23      We tried to pick off points on those side surfaces that --

24   we were conveying:  These are the points.  These are the

25   surfaces that align with the m-planes.  And we tried to do that

1  for a series of mesas, to make that clear.

2       Now, in hindsight, did we make the circles bigger than

3  they should have been?

4       Perhaps.

5       Is there some ambiguity there?

6       I think perhaps.

7       I think if we wanted to make the argument that the

8  defendants are suggesting, which is saying:  By placing these

9  yellow circles where we did, that we were identifying the

10  entire curved surface of the structure --

11       I mean, if that were the case, we would have just

12  highlighted everything.  That wasn't our intent, at all.

13       And so I think there's just a difference of opinion there.

14  And from our standpoint, this was a theory that was disclosed.

15  You know, it has never been our contention against these

16  defendants or any other defendants that the patent's been

17  asserted against -- that it's, you know, the entirety of the

18  surface of the structure that's oriented along these crack

19  planes.

20            **THE COURT:**  All right.  Thank you.

21       Did you want to add anything?

22            **MR. MAHALEK:**  You know, just briefly on maybe the

23  discrete-portion argument, Your Honor.  You looked at some of

24  the slides, I think, that were part of our infringement

25  contentions.

1        THE COURT:  Right.

2        MR. MAHALEK:  And I think it's pretty clear that the

3   yellow circle does not encompass the entire side surface of

4   those mesas.

5        And I think it goes to the point of what the purpose is of

6   the infringement contentions, which is to reasonably inform the

7   opposing party of the theory of infringement.  And we think

8   those images do that, because we did not highlight the entire

9   side.  We tried to show them as precisely as we could,

10  recognizing we're working with something that's very, very

11  small in scale; on the order of microns.  It's hard to

12  highlight and put a number one, and make it any smaller than we

13  did, and still have it be reasonably visible.

14       THE COURT:  Well, you know, don't you think if you

15  said, "portions of the surface" as opposed to "the surface,"

16  that would make it more clear what it is you're talking about?

17       MR. MAHALEK:  Agreed, Your Honor, that would make it

18  more clear.  We believe we had accomplished that visually with

19  the pictures.

20       I'll address a couple -- I guess a couple of Vizio's

21  points about the other contentions; the other two claim terms.

22       THE COURT:  Right.

23       MR. MAHALEK:  One other thing I wanted to clarify,

24  yes.  Counsel for Nichia was talking about some slides and some

25  pictures that they said were from Bluestone's contentions.

1          Those were actually images -- I think it was page 6 of the

2     Nichia slide deck.  Those weren't from Bluestone's contentions.

3     Those were images that Nichia acquired for the purposes of

4     summary judgment from their declarants.

5               THE COURT:  I'm sorry.  They got images from --

6               MR. MAHALEK:  Those are from Nichia's declarants.

7               THE COURT:  Page 6?

8               MR. MAHALEK:  Yeah.  Those are not from Bluestone,

9     Your Honor.

10               THE COURT:  Well, are the ones on the left from

11     Bluestone?

12               MR. MAHALEK:  Yes, Your Honor.

13               THE COURT:  The ones on the left?

14               MR. MAHALEK:  Yes, Your Honor.

15               THE COURT:  Yeah.  I think that's what he said.

16               MR. MAHALEK:  I thought he said they were from

17     Bluestone.  I apologize if I misheard.

18          As to the two other claim terms that were argued by

19     counsel for Vizio -- "top surface" is the first one -- the

20     Court construed the top surface as the uppermost surface of a

21     mesa providing a reduced growth area dimensioned such that it

22     reduces stress and associated cracking in the film.

23          The Court rejected that top surfaces have to be flat.

24          The Court did agree in that construction, though, that

25     some functional language was necessary.  There was a lot of

1    discussion about that during the claim construction.

2        Bluestone's amended claim construction -- or amended

3    contentions after claim construction explained how this

4    functional limitation is met.  The specification of the '557

5    patent -- and we quote this in our brief -- has a couple of

6    descriptions of what it means to dimension the top surface to

7    reduce cracking.  It's the '557 patent column 2, lines 38

8    through 41.  (Reading)  "The top surfaces of the mesas are

9    dimensioned to reduce stress and associated cracking in the

10   films.  To reduce or eliminate cracking in these films, the

11   mesas can have a width dimension of less than about 10 microns.

12   And the side surfaces and end surfaces of the mesas can be

13   oriented along the m-planes of the films."

14       So the patent tells us what it means; how the dimensioning

15   is accomplished to eliminate or reduce this cracking; a

16   dimension of less than 10 microns.

17       In our brief we go on to identify and show the

18   dimensioning of the Vizio mesas.  The Vizio mesas are all about

19   2 to 3 microns in width.

20       And I'll hand up a page from our contentions.  This is

21   also from our brief.

22   (Whereupon a document was tendered to the Court.)

23           MR. MAHALEK:  From the scale shown in the lower

24   left-hand corner of these images, you can see the dimension of

25   these mesas as clearly less than 10 microns.  Therefore, we

1  think there's a general issue of material fact that would

2  preclude summary judgment.

3        Counsel also talked about the red box.

4        **THE COURT:**  Yeah.  How do you decide what's the top

5  surface there?

6        **MR. MAHALEK:**  The claim construction, I think, gives

7  us that answer, Your Honor.  It's the uppermost surface.

8        **THE COURT:**  Okay.  Well, where is the -- where does

9  the edge of the red box go?

10       **MR. MAHALEK:**  It's a matter of degree.  And I think

11  that's a question of fact that a Judge or -- excuse me -- that

12  a jury could decide; that one of skill in the art would be able

13  to explain to the jury.

14       **THE COURT:**  Well, wouldn't one of skill in the art

15  say, "Holy moly!  I don't know whether you're infringing, or

16  not.  I don't know whether to draw the red box"?

17       **MR. MAHALEK:**  I can't speak as one of skill in the

18  art as it comes to issues of --

19       **THE COURT:**  Well, we're supposed to be thinking that

20  way.  I'm supposed to act like I am one.  So that's what we

21  need to know.

22       **MR. MAHALEK:**  Understood, Your Honor.

23       We believe that the uppermost surface is something that

24  can be identified through testimony, through experts.  And the

25  jury will understand.

1       The final point they addressed was mesa, and whether the

2  Vizio structures are a mesa, in fact.

3       The construction of "mesa" is "an elevated formation with

4  a top surface and side surfaces."

5       Vizio argues that their bubbles are shaped that don't have

6  a top surface and side surfaces with a discernible boundary or

7  line.

8       Respectfully, we don't believe that a discernible boundary

9  or line is something that was required for the mesas in this

10 case, and in the scope of the '557 patent.  And the Court

11 already found -- Your Honor found and rejecting defendants'

12 proposed construction that the mesas can be polygonal and

13 non-polygonal in shape.  As such, these mesas can have curves

14 or slopes.  So a boundary line would not be necessary or

15 appropriate for such a shape that is contemplated by --

16       **THE COURT:**  Well, maybe not necessary.  I don't know

17 about "appropriate."

18       **MR. MAHALEK:**  At any rate, Your Honor, we believe

19 that there is a genuine issue of material fact as to whether

20 the mesas in the Vizio products satisfy the claim limitations

21 such that summary judgment would be inappropriate.

22       **THE COURT:**  All right.  Okay.  Thank you.

23       Well, thank you for coming in today.  The matter will be

24 submitted.  You'll hear from me shortly.

25       What is our next --

1          **MR. CONLEY:**  We also have a case-management

2    conference scheduled for today, Your Honor.  And we've

3    submitted proposed schedules that I think -- correct me if I'm

4    wrong.  I think for the most part we're in agreement, except

5    for we're about 30 days apart in the proposed dates that would

6    come after Your Honor's summary judgment --

7          **THE COURT:**  Would it make sense for me to get you an

8    Order on these motions before we have a status?

9          **MR. GALLO:**  From our perspective it would,

10   Your Honor.

11         **THE COURT:**  Okay.  I'm going to make it this

12   afternoon then.  And I'll get you an Order as soon as I can on

13   this.

14      And then what I'd request is that you stipulate with each

15   other on a next date.  I'm not going to set one today, but if

16   you folks will undertake to do it, then we'll have a next date

17   after.

18         **THE CLERK:**  Well, Bluestone -- you say it's on --

19         **MR. MAHALEK:**  I think we could probably endeavor to

20   establish a CMC date within a couple of weeks of an Order.

21         **THE CLERK:**  Wait.  Wait.  Wait.  Wait.

22         **THE COURT:**  Okay.

23         **MR. CONLEY:**  It was all set for this morning.

24         **THE CLERK:**  Oh, okay.  Never mind.

25         **THE COURT:**  Oh, we're having it then.  We're having

1   it right now.

2          **MR. MAHALEK:**  We'll have a future one.

3          **THE COURT:**  I'm asking that we have another in a few

4   weeks.  So if you agree on when, then we'll do it then.

5          **MR. MAHALEK:**  That would be fine, Your Honor.

6          **MS. NYARADY:**  Thank you, Your Honor.

7   (At 10:27 a.m. the proceedings were adjourned.)

8   I certify that the foregoing is a correct transcript from the

9   record of proceedings in the above-entitled matter.

10

11   *Lydia Zinn*

12   _____   December 16, 2014
     Signature of Court Reporter/Transcriber   Date

13   Lydia Zinn

14

15

16

17

18

19

20

21

22

23

24

25